Good morning, Your Honors. Daniel Gonzalez on behalf of the school district. May it please the Court. Your Honor, the appellant here of the school district has submitted a number of issues on appeal, including the attorney's fees issue, but I'd really like to concentrate on something this morning that's paramount to not only the William S. Hart Union High School District, but also school districts across the state, and that's whether or not it can rely on the contracts that it reaches with the parents in case cases. Specifically, in this particular case, the suspended expulsion contract. As the Court has seen, we've raised the issue of whether the district court erred in allowing the student in this particular case to collaterally challenge the findings of the manifestation determination pursuant to the agreement that had previously been reached between the parties. Counsel, did you raise this before the district court? We did, Your Honor. We brought this up not only at the administrative level. It was highly debated, the issue of this expulsion contract, the terms of the expulsion contract, whether the parents had waived the right to challenge. That was raised before the hearing? Correct, Your Honor. The OAH hearing. And then again, at the district court level, Your Honor, the district appealed on only one issue, and it was the second manifestation determinations. As you may remember, there were two instances that resulted in the student's removal from his educational placement. The district specifically only challenged the second one. It had prevailed on the first suspension or the first manifestation determination. And subsequently, both cross appeals were consolidated as related cases, and so this was actually tried as one case, Your Honor. You didn't really answer Judge Bybee's question, because I have a note here that your argument that the parents waived their rights to challenge the manifestation determination by the expulsion agreement was not raised to the district court. Your Honor, we did submit this section in our third brief where we stated that it was part of our complaint where we specifically said that the parents had waived the rights to challenge that pursuant to the expulsion agreement, Your Honor, and that can be found. Did the district court address this? The district court did not address that, Your Honor. How could the district court not have addressed such a critical issue? This is the first issue you want to argue to us, and how is it that the district court could have overlooked this? Does that mean that we should send this back to the district court to consider the waiver issue in the first point? Your Honor, that would be the indiscretion of the court, but in this particular case, the challenge to the first due process, or sorry, the first manifestation determination was brought by the student, and so in that particular case, there was a focus on the arguments, the substantive arguments that the student had raised. Yes, but that's the point at which you've got to say they've waived this argument. Your Honor, we've submitted the record of the underlying case, including the findings and our challenges to the ability of the court to challenge, or the student to challenge the expulsion agreement. Do you have points in the record that you can point us to where you raised this? Your Honor, other than the complaint that we filed in the particular case. And you didn't put the complaint in the record here? What's that? Did you put the complaint in the record here? Yes, the complaint is in the record here, Your Honor. Can you tell us where that is in the complaint? Yes, I will provide you the site for that, Your Honor. Okay, but that's the only thing that you can point out is it was raised in the complaint and then not raised later on when they began arguing over the January? Your Honor, right. In the district court, the school site or the school actually focused on addressing the substantive allegations that the district court. You started by telling us that this was really important for school districts, not only for William Hart, but for all school districts as to whether they can rely on contracts with parents. But it wasn't important enough for you to re-raise before the district court at the time you were doing this? Well, Your Honor, it was raised as part of the issue regarding the second expulsion and whether – It sounds like it got buried in a lot of paperwork. And there would have been a particular time here where once the district court started considering all of this, you should have said to the district court, Your Honor, I don't think you can consider this because they have – we have bargained with them. We have a waiver provision. So they have waived this argument, Your Honor. Correct, Your Honor. And those arguments were implicit in our challenge to the administrative court's finding or the administrative law judge's finding that – But they were explicit enough that the district court felt like he had to address the argument. That's the problem. Your Honor, I would respectfully submit that they were nonetheless raised. Did you raise them? Did you bring anything up in a motion for reconsideration? We did not file a motion for reconsideration in this case, Your Honor. Since the district court didn't address this principal argument, it seems like it would have been a good opportunity to have said, Your Honor, we feel like you've overlooked something that we raised. Your Honor, I think that in this particular case, there were a number of issues with the district's court finding that we felt that we had to address. First, specifically, these issues regarding – Did you have a page limit or something? Your Honor, these were really – we did have a page limit, and these were really long arguments that we had to respond to. This wouldn't have been a very long argument to say, Your Honor, we can avoid all of this question. We're going to address all the merits, but we have one point we want to make up front. Here's the paragraph in the agreement with the parents that waived this argument. I understood, Your Honor, but nonetheless, as we had focused on the district court, even if where the district court allowed the student to challenge the findings of the manifestation determination at the administrative level, we feel that the district court erred in overturning the findings of the administrative law judge in that particular case. Let me ask you about that because that's what my questions were going to be about. There is the – I'll call it the January 2015 incident. And that's where the ALJ concluded that it was not a manifest of the disability behavior that day, manifestation. And the district court reversed that, correct? Correct. So before the district court got to it, am I correct that that's where this – the agreement you were referring to with Judge Bybee, that came out of this January 2015 incident, correct? Correct, Your Honor. So in that particular case, the school convened a manifestation determination to review the misconduct in this case, the student threatening other students with bodily harm. And among other people, school psychologists, school teachers, director of special education, Sharon Amright, were also present at that meeting. And at that meeting, based on all the evidence, it was determined that this particular misconduct threatening other students with bodily harm was not a manifestation of the student's disability.  And so let's just pause for there for a second. So – and I understand that they're going to argue the district court was correct, and you're arguing the district court was not correct. Correct. But now, as it links to the first argument you came out with, that agreement was tied to the finding that this was not a manifestation, correct? Correct, Your Honor. So if we hold – and we haven't talked about this case, so I don't know what these two think – but if we were to hold that the district court was correct in overturning the ALJ's decision, that the January incident was, in fact, a manifestation of the disability, then doesn't this whole issue of what the contract said – doesn't it kind of just go away? Well, arguably, Your Honor, the contract would still be important because pursuant to the contract, the parent waived the right to challenge. Right, but that was – the whole contract was based on the idea that this was not a manifestation. I mean, the whole idea was that when they signed the contract, as I understand it, it was because the school district had concluded, look, he was acting – he was misbehaving, not because of a disability. He was just misbehaving. We're going to suspend him unless you sign this piece of paper. If it's, in fact, that was wrong from the beginning, that he was acting the way he was because of his disability, then it seems like everything that follows from that would be washed away. Well, Your Honor, so let me address that point because I think that's a real important point. Specific in the suspended expulsion contract is a paragraph, and this is found in Educational Record 315. Which paragraph are you talking about? So this is paragraph D, Your Honor, Educational Record 315, where it goes through a number of rights that the parent is waiving. So when the school – I didn't see a challenge to the manifestation determination in that set of rights that were waived. So why don't you tell me how you read this to have waived their challenge that they made before the ALJ and before the district court to the manifestation that it was not a manifestation of the disability. Sure, Your Honor. So upon the district finding that the student's misconduct was not a manifestation of their disability, the parent could have followed a due process hearing request to challenge that finding. But they made that finding and then expelled them. This agreement is suspension of the expelling, right? So, Your Honor, in this particular case, upon finding that the student could be disciplined like a general ed student, the recommendation was made for the student to be expelled. Pending that expulsion, and it was approximately a two-month period, while the parent was waiting for the hearing on the expulsion, they had the right to challenge all of this, including the findings of the manifestation determination. As part of this agreement, they waived that right to go through that procedure and challenge it. Show me the language. Sure. It starts paragraph one, that the parents are waiving the rights to the expulsion hearing, including waiver of the right to all notices and times required by statute or regulations to represent it by legal counsel. Such expulsion hearings to inspect and obtain copies of all documents which would have been used at the hearing, including in this case the findings of the manifestation determination. Is this the expulsion hearing they're talking about? So the manifestation determination would have been considered at the expulsion hearing, Your Honor. Right, but there wasn't an expulsion hearing because you suspended the expulsion. Because the parent asked that the expulsion be suspended by reaching this particular agreement. So in this particular case, Your Honor, the parent agreed to a suspended expulsion contract. This was part of the parent's request. This was modified pursuant to the parent's request. And so this is the contract that is issued. The parent here specifically waived the rights to challenge the facts leading up to the expulsion or that would have been considered at the expulsion hearing and instead decided to agree to the benefits in this suspended expulsion. Does the expulsion agreement refer to the IDEA at all, the claims here? Right. So this does not refer specifically to the IDEA, but it does detail specifically, Your Honor, what the rights and obligations are here going forward, specifically regarding the suspended expulsion. When a student is expelled, they're expelled from receiving education at a school site within the district. And in this particular case, by agreeing to a suspended expulsion contract, the student was allowed to continue receiving education at a school site, which is something that he would not have been able to do had he been expelled. As a result of the manifestation determination, Your Honor, the IDEA specifically says, look, once a student's misconduct is not related to their disability, a school district can go ahead and discipline that student just as it would a general education student. Specifically, 34 CFR 300-530 specifically says that at that point, the only obligation under the IDEA that the district has is to allow the child to continue to participate in the general education curriculum, although specifically says in another setting. So this is 300-530-D. And so this contemplates that once a child commits misconduct that's not related to their disability, they can be disciplined just like any other student, including being expelled, being suspended. And 300-530 specifically lists the only obligations under the IDEA that a district still has to that student. This is why we made the argument that when the student in this particular case three months later decapitates a lizard, which resulted in the violation of the suspended expulsion contract, the district did not have to hold a second manifestation determination. At that time, the district was not expelling the student because the student had decapitated a lizard, but instead it was just reinstating what had previously been suspended pursuant to the contract. And so this all goes back to the original infraction in this case back in January 27. That's why we contend that pursuant to 300-530, the district was correct in not having to hold a second manifestation determination before it re-implemented the terms of the suspended expulsion contract. Now, with that being said, I know that on appeal, petitioner had appealed the findings regarding the provision of free appropriate public education. That was a completely second separate hearing that was held. We believe the administrative lodgers there correctly found that the district provided the student with FAPE and that none of the procedure violations resulted in a denial of FAPE. But the issue that did come up was that the relief that was being sought in that second hearing was dialectical behavioral therapy. What we argued at the time was sort of this experimental medical mental health therapy. And so the administrative law judge found that the district had not denied the student of FAPE and denied the request for the dialectical behavioral therapy because that would arguably be a related service that the student would need in order to access his education and receive FAPE. Nonetheless, without explanation, and it's unexplainable to us why in this particular case, the district court found that while it was affirming the FAPE finding, it would nonetheless award the requested relief. The district court relied heavily on Dr. Stevenson's expert testimony to determine that the IBD therapy was appropriate? Sure, Your Honor. That's the explanation. Yeah, and so that was heavily litigated and that was brought up in the district court. That whether or not someone needs this particular therapy doesn't get to the question of whether they need that therapy in order to access their education, right? So as a more basic example, if I have some sort of physical malady that I need assistance for, that may be fine. Someone may say, hey, you need a doctor to reset your bone, but the question is whether I need that in order to access my education. And so that was the entire argument. Whether or not the student might have needed, the response of the district was we know what his behaviors are. We can address them so that he can still access his education, and he did that in that case. And with that, Your Honor, I'd like to reserve the last five minutes for rebuttal. Thank you. All right. Good morning. May it please the court, Ben Conway on behalf of the family. Your Honors, the panel should affirm the district court's decision because the court saw this case for what it was, an affront to the IDEA, the idea. There's no question that the student demonstrated serious and unusual behaviors in this case. We have a 12-year-old cutting his wrists on campus. The assistant principal thought he had, quote, serious mental issues. Any educator should have said, get this kid some help. Hart provided generic treatment as usual for two years, despite it not working as his behaviors escalated. These circumstances warranted a timely and appropriate evaluation that IDEA demands, and Hart did not provide. As such, no one knew what his disability was until over two years later when the family obtained the independent evaluation of Dr. Stevenson. The court was right on the discipline claims. It was right on the student's diagnosis of borderline personality disorder, and it was right on his need for dialectical behavioral therapy. May I ask you something? Yes, Your Honor. Under the IDEA, at what point when a child is mentally ill such that his behavior is threatening violence and harm to the students around him, is that something that can't be addressed by the school district and needs possibly to be addressed in some other manner? I thank you, Your Honor. That would depend on the circumstances of the case. So in this case, all of his behaviors were at school, and it should have been initially determined at school. And an appropriate and timely evaluation could have aided in the determination of when that was appropriate to cross that line. So in May of 2014, the school did in fact have students psychiatrically hospitalized from school after the razor blade incident. That would be an example of when it was appropriate to send the student out. He was actually cutting himself and threatening other students with a weapon. I want to touch briefly on the waiver issues that my colleague discussed with the court. The ALJ and the district court got this right. And this starts with Honig v. Doe, the Supreme Court's decision, finding that Congress, in enacting the idea, intended very much to strip school districts of the unilateral authority that they had previously used to exclude students with disabilities from educational settings. It would be an affront to read a waiver of discipline violations under California Education Code as a waiver of these federal rights under IDEA. Hart's arguments on the forfeiture are not founded. I appreciate my colleague's arguments, but the three things cited in the third brief on cross appeal. Why can't you waive your rights? We get to waive rights in all kinds of difficult consequences. We have prisoners in here every day or defendants in here every day who have waived rights. They enter into plea agreements. There's a quid pro quo. Why shouldn't we enforce that in this context? Of course, Your Honor. The stronger argument is that they forfeited it, which is, I think, what the tenor of our questions was. Your argument is that we can't enforce these agreements at all. And that seems to me to be a very, very strong position. It doesn't seem to me to be a well-founded position. I apologize, Your Honor. I was unclear. I'm saying on the facts of this agreement, and this is in excerpts of record, page 315 is where clauses D and I, I believe, may be on 316. Those are the two waiver clauses. So the first waiver clause basically tracks California Education Code 48918, which is the procedural standards on an expulsion. That's paragraph D. Paragraph I purports to waive claims related to the notice. And my colleague in his third brief, I believe at page five, clarifies that the notice definitely means the notice of expulsion. That is in the record at SER 374 and 375. The parents each got identical notices. So those waivers waived exactly what they purport to waive, a direct challenge to the disciplinary proceedings. This is what was brought up in Garcia v. Los Angeles County Board of Education, where the California Supreme Court was reviewing an appeal of an expulsion and found that the expulsion timelines are mandatory and jurisdictional. So, again, I apologize that I was. So I'm still not following your argument. So are you arguing that the waivers cannot be enforced? If we thought that the waiver covered the right to challenge those proceedings in January at a later time, can they not be enforced? The parents can agree to do this, but they actually cannot do this? No, Your Honor. I think there are two distinctions there. One is, on the one hand, and I appreciated Judge Owen's comment that the Court has not yet had a chance to discuss this case. This case is about idea 20 U.S.C. 1415. At least as to this issue, 20 U.S.C. 1415-K's rights to a manifestation determination regarding discipline proceedings. Right. Why can't you waive that? It could be waived. If the school district says, look, if we go through the manifestation determination, if we conduct this hearing and we agree that this is not a way too harsh, give us another chance. We're working with him. We're trying to do what we can. We're trying to get him outside help. We're going to do everything we can to try and make this right. The school district says, okay, if you're willing to not put us to the expense of the hearing, we agree to suspend it as long as he's good for the next six months. Now, what's wrong with that arrangement? Both sides have gotten something very important out of that agreement. We enforce these kinds of agreements all the time in a criminal context. Why can't that be enforced here? Here, because in the facts of this case, there was no waiver of claims under IDEA, which is what this case is brought under. I think he's asking you hypothetically. Let's put aside for a minute that maybe you and I might agree that the waiver relates to something other than IDEA. As a hypothetical matter, can a parent waive their rights to, say, a contract with the school district? Yes, Your Honor, under certain circumstances. I appreciate the straightforward answer. What is the status of the student? Is the student still in high school? I believe he finished high school last week, Your Honor. Okay. So is any of this moot? What's remaining? Is it just the argument over attorney's fees? Is that all that's left of the case? No, Your Honor. The Ninth Circuit has looked into this mootness standard under the traditional capable of repetition and abating review standard. This case began when student was in eighth grade. But do we have injunctive relief issued by the district court here? Yes, Your Honor. And in particular, what's relevant to the student. And is it applicable only to this student or is it applicable to all students? As to my client, it's applicable to this student. Okay. Does it have broader application? Well, as to the district, it would certainly be. I informed the judgment of the district going forward. They said, well, we lost this once before. We may not want to do this again. But if there's another student, can you come in here representing that student and say you have violated an injunction issued by the district court in this case? No, not based on this particular order. However, what does have ongoing effect is the district court's decision to expunge all of records of the expulsion. This was well within the court's discretion to do so. And that has an ongoing effect on student to be able to not have an expulsion on his educational record, even after school. Counsel, can I get back to the question I asked opposing counsel? You, I'm sure, were happy when the district court reversed the ALJ on the January 2015 determination. Let's say this panel agrees with you on that question. I know we have the issue about the DBT and attorney's fees. Put those aside for a second. But in terms of the rest of the case, what's left of this case if we agree with you the district court was correct on the manifestation determination? Well, on the one hand, what's left is exactly what I just described to Judge Bybee. And I think that if the court found in our favor on what is issue three on that would address that. The other is the general principle in these cases that are capable of escaping review. Well, I don't mean in terms of a mootness. I want to be clear. In terms of what we're deciding in this case, two questions. There's first whether there's standing and mootness and rightness and so forth. Just in terms of our job in this case, there are a lot of issues floating around in this case. For example, there's a particularly very complicated legal issue that Judge Bybee has been raising about can you really waive this or not. Do we even get to that question about whether you can waive the right to challenge a determination if it turns out the district court was correct that the determination was wrong in the first place? Yes, Your Honor. This court can continue. And the Ninth Circuit precedent on this, although it's not in the briefing, is AD versus Hawaii Department of Education, 727, F3rd, 911. And that was a 2013 decision. In that case, the Ninth Circuit, it was another special education case, found that strict adherence to the same party exception in the same party prong of the analysis does not always work in IDEA cases for exactly the reason that's raised in this case. These issues arose when the student was in eighth grade, and now he's done with high school. And frankly, this case got to the Ninth Circuit in rocket speed relative to many other cases as they weave their way through the federal court system. Again, I'm not phrasing my question carefully enough. We have the January 2015 issue. The ALJ said it was not due to his disability. District Court reversed that. Out of that issue, that's when this agreement was signed, correct? The suspension of the expulsion arose out of that January 2015 issue. No, Your Honor. It is different. It did arise from that fact pattern. Right. Yes. So yes, Your Honor. Okay, so it did. Then we have the other incident, and that's, I guess what I'm, here's my question, is that what are we deciding about the second incident, I'll call it the lizard incident, if in fact that the agreement that was prepared in January 2015 was done under pretenses that we now know are not true? Do we need to resolve the legal issue that Judge Bywood was discussing if we agree with you that the District Court was right that the ALJ got it wrong in the first place? No, Your Honor. The Court could simply affirm the decision below, similar to what the Court did in Barrientos, which is cited in the briefing. It was a case Judge Wardlaw was on the panel for. That case was about the interaction between HUD Section 8 vouchers and the L.A. County Rent Control Ordinance. The lower court had found that HUD exceeded its authority, and this court found that the actual correct answer was that there was no conflict between the two states. Because there was no conflict, or rather, because even though the reasoning was different, the court was able to uphold it. And then a related question is, I know you filed a cross appeal in this case. I take it we get to the cross appeal if you, in a sense, lose on the merits of this case, but if you get what you want, we don't need to address the cross appeal, is that correct? Yes, Your Honor. Can I go back to another question that relates to what's left for this individual? The district court ordered DBT treatment. Has that ever been given to Jay?  Well, it's not in the record, but afterward, the parties worked out a solution where the district incorporated DBT modalities because of the family's inability to transport. All right, so they did incorporate it, and that was following the district court's order. Yes, it was not strictly following it. It was not a comprehensive DBT program, but that was by agreement of the parties. Okay. So, if we were to . . . I mean, reversing on that then accomplishes nothing because he got the services that he wanted. Correct, Your Honor. Okay. I have a question for you about attorney's fees. Yes, Your Honor. I was trying to reconcile a couple of different things the district court said. If you have the record, you know this record very well. In the fee award, the district court was talking about the non-expedited case. This is an ER-3, and said that . . . I'm paraphrasing here, that Hart basically failed to deny the student a free, appropriate public education. That's on page 3 of the excerpt of the record. But then on page 16 of the excerpt of the record, the district court seems to say that they did provide a FAPE. So, can you help me understand that? Because that seems to go with how the attorney's fees were calculated in this case. Of course, Your Honor. So, part of this is an issue-counting approach that . . . this is really a Hensley case, Hensley v. Eckerhart, regarding mixed results. So, the progeny of Hensley say that you don't simply count issues, but rather look to the overall relief. And here, the family got all of the relief that they sought. So, even though if the park court were to issue count, we did not prevail on a majority of issues. Nonetheless, because we got all the relief, we would normally be entitled to close to a full fee. Nonetheless, in the exercise of billing judgment, the family cut fees by approximately 40 percent of their hours to account for claims that did not succeed, and in an attempt to reduce the contentiousness of the fee request. I know there have been some attempts to mediate in this case. We looked at the docket. Has there ever been an attempt to mediate the fees? Not separate, other than the central district has its standard meet and confer process, which occurred before filing the fee motion. Well, do you think that the district court made inconsistent findings on the favor? Can they be reconciled? Yes, the district court did make problematic findings on FAPE. Those are detailed in our issue six on FAPE. The real issue here is the manifestation determination in January 2015. That was amply supported by Dr. Stevenson's evaluation. She met with the student for over nine hours across three sessions. She reviewed 500 pages of record. She talked to his teacher. She talked to his parents. She talked to his therapist. She attempted to talk to Hart's staff. She did a very thorough evaluation. Ms. Ramirez, who conducted Hart's evaluation, did not talk to any classroom teacher, did not talk to any therapist, did not talk to either parent, and did not even talk to a student in the course of the evaluation. The only standardized testings that she sort of administered was to mail home a 20-minute questionnaire. So Dr. Stevenson's report amply supports the district court's finding that students' January 2015 threats were a manifestation of his disability. Did the district court, in breaking down the fees, did it ever address the FAPE issue specifically and say, I think this many hours were worked on for the FAPE, therefore I'm awarding this fee? Did the district court break it down that way? No, the district court did not engage in a granular analysis. And as we explained in our briefing, it did not need to in this case because we exercised approximately 40% cuts in line-item billing judgment. This was not just an across-the-board 40% cut. I went line by line through 20 pages of billing to make those cuts and determine what was appropriate. Yes, sorry. So if we were to send this case back on fees, one argument you could have is that you should actually have gotten paid a lot more. Yes, I could certainly make that argument. The other thing we would probably have to relitigate is the reasonableness of the rates, which we did not cross-appeal. I see that I have two minutes. May I reserve this for rebuttal on the cross-appeal? On your cross-appeal? Or if not, Your Honor. I mean, since it's a protective cross-appeal, and I don't understand why you would- I understand. I mean, you may. Your Honors, Justice O'Connor in Schaeffer v. Wiest at page 531 observed that IDEA is supposed to be a model of cooperative federalism. California accepts almost $1.3 billion, with a B, dollars every year in return for its guarantee that school districts will comply with the IDEA. HART accepts its share of this money. And that's- although that number is not in the record, it's in the Budget Act of 2018, SB 840, line item 6100-161-0890. The district court saw this case for what it was. This was exactly the kind of illegal school expulsion that IDEA was designed to prevent. The court reached the right result on students' diagnosis of borderline personality disorder, the right result on his need for dialectical behavioral therapy, and the right result on the manifestation determination. We respectfully ask that the panel uphold that decision. Thank you very much, counsel. Your Honor, first thing I'd like to start off by asking- or providing the citations previously requested, and this can be found in the third appellate brief, page 3 and 4. And in reference to the complaint, that can be found at the educational record 209, paragraph 20. There's also the reference to the estoppel affirmative defense that was raised in this case, and also to the administrative- to the budget report. There's also a brief submitted in the administrative proceedings, which can be found in the appellant's further excerpts of records. It's number 2 at page 10, paragraphs 5 through 11, and 7 at pages 15, and then lines 2 through 3. Counsel, let me ask you this. You mentioned it was in your third brief. It wasn't in your first brief, correct? So that was in response, correct. We raised that issue, or we provided those citations in response to the challenges raised by the appellee in this particular case. But again, going back to what Judge Bybee said at the beginning, when you started off your argument by saying this is the big issue, if it's the big issue, then I still don't understand why it wasn't in your opening brief. No, we actually raised this issue in the opening brief, Your Honor. We raised the issue of whether the district court had erred in allowing the student in this particular case to collaterally challenge the manifestation determination issue. These particular citations were provided in response to the challenge by the appellee that somehow the school district couldn't raise those issues in this particular case. So in your opening brief, did you cite paragraph D to us? Paragraph D? Your Honor, we actually just went into the argument in that particular case. It was upon being challenged that we brought up the citation. So in your opening brief, you didn't tell us the district court erred because you took this thing on the merits and they waived this argument? I apologize for the confusion, Your Honor. No, we did raise that issue. We did raise it. In your opening brief? Correct, Your Honor. Where? That is, I believe, issue one, Your Honor, whether the district court erred in allowing the parent to collaterally challenge the manifestation determination. I'd also like to address this issue of mootness that Your Honor brought up. I agree with the students in this particular case that this issue is not moot. There's a real issue regarding the accurateness of the student records here. As you know, student records can be used by employers. If a student decides to go join the military, there's a real issue in making sure we have a clear record in this particular case. Moreover, this issue of dialectical behavioral therapy and the relief that was granted, that's really important for school districts. I know that the appellee raised the issue that the districts get a ton or California gets a ton of money to provide services. And that money is spent and more on special education students. School districts already have to provide related services. And this particular school district provides what's called educationally related intensive counseling services, provides therapeutic settings. But in this particular case, the request was too much. It was an actual request for what we characterize as medical services and asking school districts to provide these medical services. Now, I know on the briefs this wasn't addressed, so I don't want to spend too much time on it. But I disagree with counsel for appellee that the district somehow provided a modified dialectical behavioral therapy. Part of the argument that was discussed in the administrative law judge's decision was whether this required outpatient services. The district provided what it calls education-related intensive counseling services through that program. And the district feels that it was correct that that is all the student needed in order to receive an education. But I understood counsel to say that you had worked this out, so that wasn't really an issue. In this case, appellee declined the district's offer to fund dialectical behavioral services through an outside agency as a result of the court order in this case. So if we were to affirm the district court here, would the student be entitled to DBT? Well, so at this point, the district court has offered or has ordered the district to fund a years-long program of DBT services. Pursuant to that court order, while this appeal was pending, the district did offer to pay for those services, and that was declined. I understood counsel said they weren't seeking it because they kind of worked it out with you. I understand you haven't worked it out, and therefore he may be entitled to DBT services at the school's expense, even though he's finished school. So, Your Honor, yes, right now my understanding is... I think he was trying to help you, and you seem to be trying to help him. You've switched heads, so I'm really confused. Yeah, and no, Your Honor, because this still goes to an important issue in this particular case, and this is the characterization of dialectical behavioral therapy as related services, and whether the student ever needed that in order to access his education. And pursuant to the characterization of where the student is at now, those services were never needed in order for the student to access his education. But instead, what the district had offered all along, and this was discussed at length in the underlying administrative hearing, was this ERICS program, which is the Education Related Intensive Counseling Services. Now, we seek to have, you know, we believe that the judge erred in overturning the manifestation determination. You know, the characterization was that it was... So you're kind of repeating your earlier arguments, and you're over your time. So do you want to sum up? Yes, Your Honor. So actually, I would just point the court to Educational Record 66, which lists sort of some of the considerations the district took or considered when they decided to rule on the manifestation determination. All right. Thank you for your consideration. Thank you very much, counsel. J.F. versus William S. Hart, Union High School District, submitted.
judges: Wardlaw, Bybee, Owens